

# THE ATTORNEY GENERAL
# OF TEXAS

GERALD C. MANN
P XKXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable James E. Kilday, Director
Motor Transportation Division
Railroad Commission of Texas
Austin, Texas

Opinion No. O-1871

Re: The authority of
the Railroad
Commission to allow
the transfer of 18
contract carrier
permits to an asso-
ciation of contract
carriers which
association is
formed for the pur-
pose of effecting
a saving on in-
surance.

Dear Sir:

We are in receipt of your letter of January 18, 1940, in which you request an opinion of this department as to the authority of the Railroad Commission to allow the transfer of eighteen contract carrier permits to an association under the facts set out in your letter as follows:

"The Commission has heretofore established a policy that, when an individual or a corpora- tion has obtained over five contracts, such in- dividual or corporation will be considered by the Commission as a Common Carrier and not eligi- ble any longer as a contract permit holder; and, in such event, of course, will be required to prove convenience and necessity if he proposes to haul for more than five concerns.

"I have been presented with a problem that I desire your advice on: There are 18 indivi- duals holding 18 separate contract carrier per- mits to haul for the Continental Oil Company to 18 different towns from Wichita Fall, Texas.

These 18 individuals have no relation with each other except that each owns a filling station selling Continental products. They, however, desire to form an association or a trusteeship and to file an application with the Commission and transfer their 18 different contract carrier permits to the association, and to be held by the association from year to year, subject to a renewal of the association by the individuals.

"It is represented that the only reason they desire that this be done is because, in such event, the association can get fleet insurance and, of course, you know such insurance is cheaper. It is desired by these individuals that they have the permission to dissolve the association at the end of any given year after the association is authorized, so that, in the event the association is dissolved, the individual permits would revert back to the individuals that now own them."

Under the terms of Article 911b, Section 1 (g), an association which operates or causes to be operated motor vehicles could be a "motor carrier." Said provision reads as follows:

"(g) The term 'motor carrier' means any person, firm, corporation, company, copartnership, association or joint stock association, and their lessees, receivers or trustees appointed by any Court whatsoever, owning, controlling, managing, operating or causing to be operated any motor propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns."

There can be no question, therefore, but that the proposed association could be a motor carrier and could operate as a contract carrier within the meaning of the Motor Carrier Act.

The Railroad Commission of Texas is authorized to approve the transfer or lease of a contract carrier permit under the authority of House Bill 224, Acts of the 46th Legislature, 1939. This Article has been incorporated into Vernon's Annotated Civil Statutes as Article 911b, Section 6 (f) and reads as follows:

"(f) Any contract carrier permit held, owned, or obtained by any motor carrier operating under the provisions of Section 6 may be sold, assigned, leased, transferred, or inherited; provided, however, that any proposed sale, lease, assignment, or transfer shall be first presented in writing to the Commission for its approval and the Commission may disapprove such proposed sale, assignment, lease, or transfer if it be found and determined by the Commission that such proposed sale, assignment, lease, or transfer is not in good faith or that the proposed purchaser, assignee, lessee, or transferee is not capable of continuing the operation of the equipment proposed to be sold, assigned, leased, or transferred in such a manner as to render the services demanded in the best interest of the public; the Commission in approving or disapproving any sale, assignment, lease, or transfer of any permit may take into consideration all of the requirements and qualifications of a regular applicant required in this Section, and apply same as necessary qualifications of any proposed purchaser, assignee, lessee, or transferee; provided, however, that in case a permit is transferred that the transferee shall pay to the Commission a sum of money equal to ten (10) per cent of the amount paid as a consideration for the transfer of the permit which sum of ten (10) per cent shall be deposited in the State Treasury to the credit of the Highway Fund of the State; provided, however, that any permit obtained by any motor carrier or by any assignee or transferee shall be taken and held subject to the right of the State at any time to limit, restrict, or forbid the use of the streets and highways of this State to any holder or owner of such permit. Every application filed with the Commission for an order approving the lease, sale, or transfer of any permit shall be accompanied by a filing fee in the sum of Ten Dollars ($10) which fee shall be in addition to other

fees and taxes and shall be retained by the
Commission whether the lease, sale, or transfer
of the permit is approved or not. Added Acts
1939, 46th Leg., H. B. #224, § 1."

Under the provisions of the above quoted article
if the Railroad Commission of Texas satisfied itself that
a transfer or lease of a contract carrier permit should be
approved, the Commission has the authority to grant permis-
sion for such transfer or lease and this rule would apply
in the case at hand.

It is provided in H. B. No. 224 that a contract
carrier permit may be either assigned, leased, transferred
or inherited. Evidently the attempt here is to lease or
assign the eighteen contract carrier permits to the asso-
ciation for a period of a year. In other words, we do not
have here an attempt to make an outright assignment or
transfer of the eighteen contract carrier permits to the
association, but rather it is to be an assignment or lease
on a year to year basis.

If the Railroad Commission should approve such
leases or assignments of the eighteen contract carrier per-
mits to the association then the association would have to
be regarded as operating under eighteen separate contract
carrier permits. It could not be said that the associa-
tion would be operating under one permit unless said associa-
tion should apply to the Railroad Commission for a new per-
mit and be granted the same. As long as the association
would be operating under the eighteen leased or transferred
contract carrier permits, then, the Railroad Commission
would have to recognize such association as operating under
eighteen permits and not under one.

It is the opinion of this department, therefore,
that the Railroad Commission has the authority to grant
permission to the eighteen contract carriers involved to
transfer, lease, or assign their permits to an association
if the Commission feels that the permission for such trans-
fer, assignment, or lease is warranted under the terms of
H. B. No. 224. However, unless the association obtained
a new permit it would be operating under the eighteen con-
tract carrier permits and the Railroad Commission would have
to consider all of such permits separately and not as one
permit during the existence of the association.

In your letter you ask whether or not an associa-
tion operating under eighteen separate contract carrier

permits would be violating the rule that the Commission as heretofore established that an individual who has over five contracts is a common carrier and must apply for a certificate of convenience and necessity. You state in the first paragraph of your letter, however, "and in such event, of course, will be required to prove convenience and necessity if he proposes to haul for more than five concerns." It is to be pointed out in this connection that the proposed association which would be operating under eighteen contract carrier permits would not be hauling for more than five concerns because said association would be hauling for only one concern, the same being the Continental Oil Company. From the statement in your letter, therefore, it seems that the rule of the Commission would apply only where the person or corporation is proposing to haul for more than five concerns. If that is the rule of the Commission, then, the association here would not be violating the same by operating under eighteen contract carrier permits because it would only be hauling for one concern and not for more than five. If the rule of the Commission that you mention in your letter applies to every carrier that operates under more than five contract carrier permits, regardless of whether said carrier is hauling for one concern or for more than five concerns, then, in that case, the proposed plan would be a violation of such a rule.

We trust that the above discussion will be sufficient to enlighten you as to the authority of the Railroad Commission in this matter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Billy Goldberg
Assistant

BG:JM     APPROVED     Jan 30, 1940

ATTORNEY GENERAL OF TEXAS